[No. A069552. First Dist., Div. Three. July 5, 1996.]

KERRI O'KANE, Plaintiff and Respondent, v.
MARK IRVINE, Defendant and Appellant.

COUNSEL

Mark Irvine, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

OPINION

PARRILLI, J.—Mark Irvine appeals the domestic violence prevention order restraining him from coming within 100 yards of respondent Kerri O'Kane[1] or her residence. Irvine contends the court had no jurisdiction to issue the order as O'Kane did not establish that she is a protected person under the Domestic Violence Prevention Act (Act). (Fam. Code,[2] § 6200 et seq.). Specifically, Irvine submits that O'Kane cannot be considered a "cohabitant" within the meaning of sections 6209 and 6211. We have determined Irvine's appeal is meritorious and, accordingly, reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In August 1994, O'Kane had sublet a bedroom at 134 Ashton Avenue, San Francisco from the lessee, Kristie Schimmelman. At approximately the same time Irvine had sublet the downstairs unit from Schimmelman. O'Kane, Irvine and Schimmelman had access to some of the same common areas in the house, i.e., the bathroom, kitchen, living room and dining room. There was no romantic or friendly relationship between O'Kane and Irvine. Prior to their individual sublease agreements with Schimmelman, the parties were not acquainted with each other.

After the parties had been residing at 134 Ashton Avenue for a few weeks, an altercation occurred between Irvine and O'Kane. In her application for a temporary restraining order (TRO) under the Act, O'Kane claimed Irvine assaulted her, hitting her in the upper torso and causing her to fall to the ground. Although the police were summoned, Irvine was not cited by the responding officer.

---

[1] O'Kane has not filed a respondent's brief with this court.
[2] All statutory references are to the Family Code unless otherwise indicated.

Section 3.a. of the TRO form application sets out various descriptions of the domestic setting under which a person may be granted relief under the Act. (See § 6211.) Section 3.a.(4) provides the description that the applicant and the person to be restrained "live together or cohabit." O'Kane crossed out the words "or cohabit" and marked on her form that Irvine and she "live together in the same house." Irvine opposed the TRO, denying the assault allegation. The trial court granted the TRO on October 13, 1994, and set the matter for hearing.[3]

Following the hearing on the restraining order, the trial court issued an order that Irvine shall stay at least 100 yards away from O'Kane and her residence and that each party shall arrange to recover his or her personal property from 134 Ashton Avenue when the other party is not present. The order expires October 18, 1997.

Irvine's motion for new trial and motion to set aside and vacate the judgment were denied following an evidentiary hearing. Irvine appeals, challenging both the TRO[4] and the restraining order following hearing.

## DISCUSSION

Irvine contends the trial court had no authority to grant the restraining order in this case as the parties are not subject to the provisions of the Act. He submits domestic violence cannot have been perpetrated against O'Kane as she fits none of the descriptions contained in section 6211, which describes protected persons under the Act. Our examination of the Act discloses, under the facts before it, the trial court had no jurisdiction to issue the restraining order to O'Kane.

Section 6300 provides: "An order may be issued under this part, with or without notice, to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved, if an affidavit shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." Section 6211 sets out that domestic violence is abuse perpetrated against various classifications of persons, including "(b) [a] cohabitant or former cohabitant, as defined in

---

[3] A filed copy of the order to show cause and the TRO are not a part of the superior court file. With his brief, Irvine has submitted a copy of this document signed by Judge Richard Figone on October 13, 1994.

[4] Irvine's appeal from the TRO, following the trial court's grant of the three-year restraining order, is moot. Accordingly, we dismiss Irvine's purported appeal from the TRO. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 98, p. 117.)

Section 6209." In turn, section 6209 defines "cohabitant" as "a person who regularly resides in the household." The remaining subdivisions of section 6211, describing types of persons in other domestic settings, are wholly inapplicable to the facts presented here.[5] Finally, section 6220 explains: "The purposes of this division are to prevent the recurrence of acts of violence and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence."

Irvine submits the facts do not show O'Kane was "a person who regularly resides in the household." He contends, and we agree, that the Legislature did not intend to include the type of living arrangement presented by this case in its definition of cohabitants. It is pertinent to consider applicable principles of statutory construction.

The fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*T. M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273, 277 [204 Cal.Rptr. 143, 682 P.2d 338].) An equally basic rule of statutory construction is that courts are bound to give effect to statutes according to the usual and ordinary meaning of the language employed in framing them. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) Although a court may properly rely upon extrinsic aids, it should first look to the words of the statute to determine the Legislature's intent. Where the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) If the Legislature has provided an express definition of a term, that meaning is binding on the courts. (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 804 [268 Cal.Rptr. 753, 789 P.2d 934].) Further, where a word or phrase in a statute has been judicially construed, a strong presumption exists that the Legislature is using it in the

---

[5]Other than subdivision (b), section 6211 describes "domestic violence" as abuse perpetrated against: "(a) A spouse or former spouse. [¶] . . . [¶] (c) A person with whom the respondent is having or has had a dating or engagement relationship. [¶] (d) A person with whom the respondent has had a child, where the presumption applies that the male parent is the father of the child of the female parent under the Uniform Parentage Act . . . . [¶] (e) A child of a party or a child who is the subject of an action under the Uniform Parentage Act, where the presumption applies that the male parent is the father of the child to be protected. [¶] (f) Any other person related by consanguinity or affinity within the second degree."

precise sense which had been placed upon it by the courts. (*People* v. *Weidert* (1985) 39 Cal.3d 836, 845-846 [218 Cal.Rptr. 57, 705 P.2d 380].)

■ The Legislature's prescribed definition for the term cohabitant in section 6209, included the word "household" which has been interpreted by our courts as meaning "a collection of persons, whether related or not, who live together as a group or unit of permanent or domestic character, with one head, under one roof or within a common curtilage, who direct their attention toward a common goal consisting of their mutual interests." (*Jacobs* v. *Fire Ins. Exchange* (1991) 227 Cal.App.3d 584, 594 [278 Cal.Rptr. 52], fns. omitted.) The *Jacobs* court, in defining household within the context of an insurance policy, found the term unambiguous. The term "is not subject to different definitions; rather, the various fact patterns presented to courts demonstrate a range of human experience—some households are simply more or less unusual than others." (*Id.*, at p. 591.) This judicial definition comports with the dictionary definition of household which provides: "those who dwell under the same roof and compose a family; *also*: a social unit comprised of those living together in the same dwelling." (Webster's New Collegiate Dict. (9th ed. 1984) p. 584.)

■ Irvine and O'Kane did not live together as a group with a common goal. They cannot be described as a social unit living together. The parties plainly cannot be considered cohabitants, within the meaning of section 6209, subdivision (b) and section 6211 as they did not regularly reside in the same household. Further, the statutory definition of cohabitant as someone who "regularly resides" in the household, implies the Legislature intended the Act protect abuse victims who have some permanency in their living arrangements. The facts of this case establish O'Kane and Irvine had anything but a permanent living arrangement. The connection demonstrated between Irvine and O'Kane was wholly by happenstance. Before subletting rooms from Schimmelman, Irvine and O'Kane were not even acquainted with each other. Although the Act clearly has a broad protective purpose, both in its stated intent and the breadth of the persons protected (see *Caldwell* v. *Coppola* (1990) 219 Cal.App.3d 859, 863 [268 Cal.Rptr. 453] [describing predecessor statute, former Code of Civil Procedure section 540]; Stats. 1990, ch. 752, § 1, p. 3409), we find nothing in the Act to indicate a legislative intent to cover the type of residential arrangement that existed between Irvine and O'Kane.

As we have determined the court acted without jurisdiction in granting the restraining order herein, we need not reach Irvine's remaining challenges to the judgment.

The judgment is reversed.

Costs on appeal shall be awarded to appellant.

Phelan, P. J., and Corrigan, J., concurred.