Filed 2/13/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re E.F., A Person Coming Under the Juvenile Court Law. | B295755 (Consolidated with B297079) (Los Angeles County Super. Ct. No. PJ53161) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>E.F.,<br><br>        Defendant and Appellant. | |

        APPEAL from orders of the Superior Court of Los Angeles County, Morton Rochman, Judge.  Affirmed.

        Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant E.F.

        Jackie Lacey, District Attorney, Phyllis Asayama and Grace Shin, Deputy District Attorneys, for Plaintiff and Respondent.

* * * * * *

The juvenile court entered a temporary restraining order (TRO) and, subsequently, a three-year restraining order against a 14-year-old charged with poisoning one of her high school classmates. Among other things, this appeal presents the following question: Is a prosecutor seeking a TRO under Welfare and Institutions Code section 213.5 required to give advance notice of her intent to do so (or is notice at the hearing where the TRO is requested sufficient)?[1] The Court of Appeal in *In re L.W.* (2020) 44 Cal.App.5th 44 (*L.W.*) held that advance notice is required. We respectfully disagree, and publish to explain why. We also reject the juvenile's challenge to the lengthier restraining order, and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

In December 2018, E.F. (minor) and L.S. were ninth graders enrolled in the same art class in high school. For unknown reasons, minor offered L.S. a Cup of Noodles, microwaved it, and handed it to him. When L.S. went to drink the broth, it smelled of bleach and he threw it out.

### II.    Procedural Background

In January 2019, the People filed a petition urging the juvenile court to exert delinquency jurisdiction over minor because she had committed the crime of poisoning, a felony (Pen. Code, § 347, subd. (a)).

On February 11, 2019, minor first appeared in juvenile court with counsel for arraignment and denied the allegation.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

The prosecutor asked the juvenile court to issue a TRO enjoining minor from having any contact with L.S. and ordering her to stay away from him. Minor objected on the ground that the prosecutor's request did not meet the procedural requirements set forth in Code of Civil Procedure section 527. Citing the arrest report that summarized the offense, the juvenile court overruled minor's objection and issued the requested TRO, which was set to expire on March 5, 2019 when the court would hear evidence on whether to issue a further restraining order.

On March 5, 2019, the juvenile court continued the hearing until April 2, 2019, and ordered that the TRO remain in effect until that date.

At the April 2, 2019 hearing, the prosecutor called L.S. as a witness in support of the People's request for a longer, three-year restraining order. L.S. testified to the facts set forth above. He also repeatedly affirmed that he wanted a restraining order to protect him because he was unsure what else minor might do, although he admitted that he did not think minor's conduct was "a big deal" at the time. The juvenile court issued the further restraining order with terms mirroring the TRO's.

Minor filed timely notices of appeal from the TRO and the restraining order. We consolidated the appeals.

## DISCUSSION

On appeal, minor argues that (1) the TRO was invalid because (a) it was procedurally defective and (b) unsupported by substantial evidence, and (2) the restraining order is invalid because it is unsupported by substantial evidence. We have jurisdiction to hear her appeals of these orders. (*In re Jonathan V.* (2018) 19 Cal.App.5th 236, 238, fn. 1 ["Restraining orders issued in juvenile proceedings are appealable."] (*Jonathan V.*).)

3

## I. TRO

### A. *Mootness*

As a threshold matter, minor's challenge to the TRO is moot. (*O'Kane v. Irvine* (1996) 47 Cal.App.4th 207, 210, fn. 4 [an "appeal from [a] TRO, following [a] trial court's grant of [a longer] restraining order, is moot"].)

Minor urges us to exercise the discretion we have to overlook mootness as to issues that are ""'capable of repetition, yet evading review.'"" (*United Farm Workers v. Superior Court of Santa Cruz County* (1975) 14 Cal.3d 902, 906-907, quoting *So. Pac. Terminal Co. v. Int. Comm. Comm.* (1911) 219 U.S. 498, 515.) At most, this discretion extends to her procedural challenge, since her substantial evidence challenge is necessarily grounded in the facts of this case and hence not "capable of repetition."

### B. *Notice requirement for TROs under section 213.5*

In her procedural challenge, minor argues that the juvenile court erred in issuing the TRO because the prosecutor did not provide her advance notice of his intention to seek a TRO before the hearing when it was requested. Because minor's argument turns on statutory interpretation, our review is de novo. (*Jonathan V.*, *supra*, 19 Cal.App.5th at p. 241.)

Section 213.5 authorizes a juvenile court, when a petition to exert delinquency jurisdiction is pending, to issue an "ex parte order" that "enjoin[s] the child from contacting, threatening, stalking or disturbing the peace of any person the court finds to be at risk from the conduct of the child." (§ 213.5, subd. (b).) More specifically, section 213.5 explicitly authorizes two different types of ex parte restraining orders: (1) TROs that may be "granted without notice," but which presumptively expire after 21

4

to 25 days (§ 213.5, subd. (c)(1)), and (2) restraining orders that may be granted "upon notice and a hearing," but which may be effective for up to three years (*id.*, subd. (d)(1)). (See *Jonathan V.*, *supra*, 19 Cal.App.5th at p. 241 [so recognizing].) The applicable Rule of Court echoes these distinctions, providing in pertinent part that a TRO application "may be submitted without notice." (Cal. Rules of Court, rule 5.630(d).) In light of the plain language of section 213.5 spelled out above, a juvenile court that issues a TRO (rather than a longer-term restraining order) may do so "without notice"—that is, even when a prosecutor does not give the juvenile advance notice of his or her intent to do so. (*People v. Maultsby* (2012) 53 Cal.4th 296, 299 ["The statute's plain language controls unless its words are ambiguous."].)

Minor resists this conclusion by highlighting the language contained in subdivision (b) of section 213.5. That is the subdivision that authorizes both types of restraining orders (that is, TROs and longer-lasting restraining orders), and it requires an "application in the manner provided by Section 527 of the Code of Civil Procedure." (§ 213.5, subd. (b).) From this, minor argues that (1) Code of Civil Procedure section 527 provides that "[n]o temporary restraining order shall be granted without notice to the opposing party" unless (a) an "affidavit" or "verified complaint" "show[]" "that great or irreparable injury will result to the applicant before the matter can be heard on notice," and (b) the applicant "certifies . . . under oath" to his or her efforts to give notice (Code Civ. Proc., § 527, subd. (c)); and (2) several cases have held that "notice" for purposes of granting a restraining order means notice *in advance of the hearing where the order is granted* (*Babalola v. Superior Court* (2011) 192 Cal.App.4th 948, 965 [so noting, in dicta] (*Babalola*); *Jonathan V.*, *supra*, 19

5

Cal.App.5th at p. 242 [so noting]).  Thus, minor concludes, the issuance of the TRO in this case was improper because section 213.5, through its cross-reference to Code of Civil Procedure section 527, requires advance notice unless one of its special requirements are met and the prosecutor did not meet those requirements here.

We reject minor's argument—and thus part ways with *L.W.*—for three reasons.

First, minor's reading of section 213.5 contravenes the plain language of section 213.5 and that language, as discussed above, expressly contemplates—and hence expressly authorizes—that "a temporary restraining order" may be "granted without notice."  (§ 213.5, subd. (c)(1).)  At best, section 213.5's cross-reference to Code of Civil Procedure section 527 creates some degree of ambiguity regarding the necessity of advance notice insofar as section 213.5 does not require advance notice for TROs and Code of Civil Procedure section 527 presumptively does.  But any ambiguity must be resolved in favor of section 213.5's explicit language that TROs issued under its auspices may be issued "without notice."  This resolution is the only construction of section 213.5 that gives effect to the subdivision that most directly and specifically speaks to the notice required for TROs issued under section 213.5 (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 960 ["'more specific provisions take precedence over more general ones'"], that harmonizes *both* subdivisions of section 213.5 by giving effect to section 213.5's specific language dispensing with advance notice for TROs while incorporating all Code of Civil Procedure section 527's procedures that do not conflict with section 213.5's specific language (*Ste. Marie v. Riverside County Regional Park & Open-*

6

*Space Dist.* (2009) 46 Cal.4th 282, 289 ["We must of course read statutes as a whole so that all parts are harmonized and given effect."]), and that avoids rendering section 213.5's specific language superfluous (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1173 ["We generally avoid interpretations that render any part of a statute superfluous."]).

Second, giving effect to section 213.5's express language dispensing with advance notice for TROs also gives effect to the reasonable line drawn by our Legislature: TROs do not need advance notice because they are typically issued under more emergency circumstances, while longer-lasting restraining orders do need advance notice because they are typically issued under less pressing circumstances (usually because a TRO is already in place). Indeed, all of the cases minor cites in support of her argument that advance notice is required all deal with non-TROs. (*Babalola*, *supra*, 192 Cal.App.4th at pp. 951, 965 [restraining order to protect witnesses under Penal Code section 136.2]; *Jonathan V.*, *supra*, 19 Cal.App.5th at pp. 240-242 [two-year restraining order under section 213.5]; see also, *People v. Ponce* (2009) 173 Cal.App.4th 378, 380-383 [restraining order to protect witnesses under Penal Code section 136.2] (*Ponce*); *People v. Selga* (2008) 162 Cal.App.4th 113, 115-119 [same] (*Selga*).) None deals with TROs, as *Jonathan V.* was careful to point out. (*Jonathan V.*, at p. 242 ["[t]he restraining order in this case is not a temporary restraining order"].)

Lastly, giving effect to section 213.5's express language disavowing any advance notice requirement still accords with due process. Although section 213.5 and its implementing Rule of Court purport to authorize TROs "without notice," TROs issued at arraignments are not literally "without notice"; instead, they

7

are issued without notice *in advance of the hearing*. The minor appearing at the arraignment with counsel is still notified of the prosecutor's TRO application and has the opportunity to oppose the application. Because due process guarantees notice and the opportunity to be heard (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212), the issuance of TROs under section 213.5 accords with due process and thus provides no basis to read section 213.5 in a counter-textual manner to avoid possible constitutional infirmity. (E.g., *People v. Garcia* (2017) 2 Cal.5th 792, 815 [noting "canon of constitutional avoidance" obligating courts to "construe statutes to avoid serious constitutional problems if such a reading is fairly possible"].)

## II. Restraining Order

We review a trial court's issuance of a restraining order for an abuse of its discretion, and the evidentiary foundation for such an order for substantial evidence. (*In re Carlos H.* (2016) 5 Cal.App.5th 861, 864 (*Carlos H.*); *In re Cassandra B.* (2004) 125 Cal.App.4th 199, 210-211.) Under substantial evidence review, we "interpret the facts in the light most favorable to the [order], indulge . . . all reasonable inferences in support of the trial court's order," and do not reweigh the evidence. (*Hilb, Rogal & Hamilton Ins. Services v. Robb* (1995) 33 Cal.App.4th 1812, 1820.)

Substantial evidence supports the juvenile court's issuance of the restraining order in this case. As noted above, and as pertinent here, the court may issue an order that "enjoin[s] the child from . . . disturbing the peace of any person the court finds to be at risk from the conduct of the child." (§ 213.5, subd. (b).) To issue such an order, "[t]here need only be evidence that the

8

[minor who is restrained] 'disturbed the peace' of the protected child"—that is, that the minor engaged in "'"conduct that destroy[ed] the mental or emotional calm of the other party."'" (*In re Bruno M.* (2018) 28 Cal.App.5th 990, 997, (*Bruno M.*), quoting *Perez v. Torres-Hernandez* (2016) 1 Cal.App.5th 389, 401.)  Here, L.S. testified that minor put a chemical smelling like bleach in a Cup of Noodles she offered to prepare for him, and that he was "possibly" concerned that drinking bleach could cause "something bad" to happen to him.  Minor's act of putting bleach in food given to a classmate, who recognized that ingesting it could hurt him and feared that she could do something similar in the future, is sufficient to destroy that classmate's "mental or emotional calm."  Thus, it was enough to support the restraining order.

Minor resists this conclusion.  Citing *Selga, supra,* 162 Cal.App.4th at p. 118, and *Ponce, supra,* 173 Cal.App.4th at pp. 383-385, she contends that the People also needed to prove a potential for future intimidation or dissuasion and points out the absence of any evidence that minor has since tried to harm L.S.  Citing *Carlos H., supra,* 5 Cal.App.5th 861, she further argues that there is no reason to apply a different standard for juveniles than adults.  As noted above, however, *Selga* and *Ponce* regard orders to protect witnesses under Penal Code section 136.2 and are for that reason inapt.  Unlike Penal Code section 136.2, section 213.5 does not require "evidence of a reasonable apprehension of future physical abuse" or potential harm as a predicate to the issuance of a restraining order.  (*Bruno M., supra,* 28 Cal.App.5th at p. 997.)  Thus, the different standards rest—not on the age of the restrained party—but on the different substantive standards in the two different statutes.  And *Carlos*

9

*H.* is not to the contrary; indeed, it merely held that section 213.5 empowers a juvenile court to issue a stay-away order like the ones available for adults, but in no way held that section 213.5 is limited to the types of restraining orders (or the subset of such orders authorized by Penal Code section 136.2) that may be issued against adults. (*Carlos H.*, at p. 870.) Citing Code of Civil Procedure section 527, subdivision (c), minor asserts that the People also needed to prove that L.S. would suffer "great or irreparable injury" if the order were not issued. But this showing is only required when a restraining order is issued "without notice to the opposing party" (Code Civ. Proc., § 527, subd. (c)), and the restraining order issued by the juvenile court on April 2, 2019 was preceded by weeks' worth of notice. Minor lastly notes that the People failed to prove that she actually put bleach in L.S.'s Cup of Noodles. But under substantial evidence review, we are to indulge reasonable inferences favorable to the order and one can reasonably infer that a liquid that smells like bleach may contain bleach.

## DISPOSITION

The orders are affirmed.

**CERTIFIED FOR PUBLICATION.**


_____, J.
HOFFSTADT

We concur:


_____, P.J.
LUI


_____, J.
CHAVEZ

11