[No. D008639. Fourth Dist., Div. One. Mar. 30, 1990.]

PAMELA L. CALDWELL, Plaintiff and Respondent, v.
ROCCO F. COPPOLA, Defendant and Appellant.

COUNSEL

A. David Puzo and Sharron Voorhees for Defendant and Appellant.

Gore, Grosse, Greenman & Lacy, Kenneth L. Greenman and Michael L. Klein for Plaintiff and Respondent.

OPINION

**NARES, J.**—Rocco F. Coppola appeals the domestic violence injunctive order restraining him from harassing the applicant, Pamela L. Caldwell, and her sister, Kim Tucker. Coppola contends the order is void for lack of personal jurisdiction based on improper service. Coppola asserts service was improper because Tucker, a person protected by the court's order, personally served him with the application and supporting declaration. Coppola suggests a person protected by a temporary restraining order (TRO) is a party to the proceeding and, as such, cannot validly effect personal service. We agree and reverse.[1]

## FACTS AND PROCEDURE

On June 14, 1988, using forms adopted by the Judicial Council, rule 1296, Caldwell applied for an ex parte order to show cause and TRO against Coppola. On the application Caldwell indicated she and Coppola were not related but lived in the same household within the last six months, until Caldwell moved out on May 1, 1988. Caldwell's application described an incident on June 11, 1988, where Coppola came to her business, threw her down and repeatedly hit her head on the ground. On page 4 of the application, Caldwell indicated she lived alone. Kim Tucker was named as a "family and household member" to be included under the protection of the TRO.[2]

Based on Caldwell's application, the court issued a TRO and ordered Coppola to appear. On June 16, Tucker personally served Coppola. Coppola claims the manner of service was abusive, including throwing the papers at him, spitting at him and name calling. In a declaration, Thomas Fenn, a superintendent at Coppola's work site, stated on June 16 Tucker showed

---

[1] Because this jurisdictional issue is dispositive, we do not address and we express no opinion on Coppola's contention the order should be reversed because there was no evidence of a continuous course of violence.

[2] Identifying Tucker as Caldwell's sister is not clearly stated in the application, but at the August 3 hearing, the court impliedly notes this relationship.

him the TRO and said Coppola was "crazy," having beaten her sister and put her in the hospital several times.

At the July 1 hearing Coppola's attorney made a special appearance to contest personal jurisdiction, asserting service of process was defective, in part because Coppola was not served with a complete set of declarations. Coppola requested a continuance to respond to Caldwell's allegations. A criminal case was pending against Coppola for the same acts alleged in Caldwell's application. The court granted the continuance and found compliance with Code of Civil Procedure[3] sections 527 and 550.[4] The court also struck from the record a supplemental page of the declaration which had apparently not been served on Coppola. The hearing was continued to August 3 with the TRO in place.

At the August 3 hearing Coppola contested personal jurisdiction, asserting service was invalid because Tucker was an "express beneficiary" of the TRO, had interests similar to Caldwell, and as a result was a "party" to the action who could not lawfully serve the order to show cause.[5] Coppola also argued a single act of misconduct rarely justifies issuing an injunction. The court found Tucker was not a party to the action and a continuous course of misconduct is not required before a domestic violence restraining order can issue.[6] No oral testimony was taken from Caldwell, Tucker or Coppola at either hearing.

## DISCUSSION

At the outset we note the record presents some inconsistencies. Although the TRO includes Tucker as a protected person, Caldwell did not include Tucker's name on the application or on the permanent injunction as one who should be protected. Additionally, no facts alleged in the application indicate Coppola was a threat to Tucker.[7]

---

[3] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[4] Section 527, subdivision (a), in pertinent part, permits the court to issue an injunction based on a verified complaint or affidavit, and states, "No preliminary injunction shall be granted without notice to the opposite party."

Section 550 states, "The court shall order the plaintiff . . . to deliver a copy of the order . . . to each local law enforcement agency." The transmittal of the order to a law enforcement agency is not supported by the record.

[5] Section 414.10 states, "A summons may be served by any person who is at least 18 years of age and *not a party to the action.*" (Italics added.)

[6] The record does not contain an order after hearing. A minute order states the applicant is to be granted relief "as prayed." The absence of an order after hearing and granting relief "as prayed" is confusing because there is no prayer for relief in an application of this nature.

[7] In its only reference to Tucker, Caldwell's application states, "He [Coppola] was angry because I was moving in with my sister and began insulting us both."

■ Proper service is a requirement for a court's exercise of personal jurisdiction. (*Sternbeck* v. *Buck* (1957) 148 Cal.App.2d 829 [307 P.2d 970].) ■ An order entered without personal jurisdiction over the defendant is void. (*Slaughter* v. *Legal Process & Courier Service* (1984) 162 Cal.App.3d 1236 [209 Cal.Rptr. 189].) More particularly, under section 414.10, a *party* to an action is prohibited from personally serving the defendant.

Here, the TRO sought to protect not only the applicant, Caldwell, but also her sister, Tucker, who was denominated as a "household member." Tucker, however, served the order to show cause on Coppola. Coppola contends under these circumstances Tucker's role is equivalent to that of a party and, as such, she is prohibited from validly serving legal papers under section 414.10. Accordingly, Coppola asserts the order is void for lack of personal jurisdiction. Determining whether Tucker's status as a protected "household member" makes her a "party" under section 414.10 first requires examining the Domestic Violence Protective Act (DVPA).

### DOMESTIC VIOLENCE PROTECTIVE ORDERS

The DVPA, enacted in 1979, involved additions and amendments to the Code of Civil Procedure and the Civil, Government, and Penal Codes. (Review of Selected 1979 California Legislation (1979) 11 Pacific L.J. 465.)

Unlike many California statutes, the history surrounding the passage of the DVPA and other domestic violence protective acts is substantial. (See First Rep. of the Advisory Com. on Family Law to the Sen. Subcommittee on the Admin. of Justice, Domestic Violence (1978); Truninger, *Marital Violence* (1971) 23 Hastings L.J. 259.) Responding to increased public concern, the Advisory Commission Report, *supra*, recommended legislation to expand remedies to domestic violence victims. The purpose of the DVPA, stated in section 540, is to prevent recurring acts of abuse by a spouse or household member and "to provide for a separation of the persons involved in such domestic violence."

■ The protective purpose is broad both in its stated intent and its breadth of persons protected. The term "household member" in section 542, subdivision (c) includes any "other person who regularly resides in the household, or who within the last six months regularly resided in the household." This broad language protects both married and unmarried cohabitants who are domestic violence victims. (*In re Marriage of Van Hook* (1983) 147 Cal.App.3d 970 [195 Cal.Rptr. 541].)

The wide nature of relief for protection and separation is also evidenced by the forms promoted by the Judicial Council under the DVPA.[8] The particular application forms used by Caldwell were adopted by Rule 1296, revised January 1, 1985, and provide a blank space for the plaintiff to add the "following family and household members [names]" on page 1 of the application.

██ When Tucker's name was listed in the TRO, Tucker gained the same protection as the complainant, Caldwell. Tucker's inclusion in the TRO created in Tucker an interest in the litigation legally indistinguishable from Caldwell's. For example, after the court issues the TRO, Coppola is subject to sanctions if he personally contacts or even telephones Tucker.[9] Thus, Tucker is a "person involved in such domestic violence" under section 540.

Tucker not only has an interest in the restraining order, but, consonant with the goal of separating persons involved in domestic violence, has an obligation not to encourage or incite a violation of that TRO. Violent domestic relationships are, unfortunately, not rare. (See *People* v. *Ballard* (1988) 203 Cal.App.3d 311 [249 Cal.Rptr. 806].) This violence can extend to friends and relatives who become partisans in domestic warfare. Like Caldwell, Tucker is protected by the TRO and therefore has a similar interest in restraining Coppola.

### SERVICE OF PROCESS

The first Practice Act limited personal delivery of the summons to the sheriff of the county where the defendant may be found. (Stats. 1849-1850, ch. 142, § 26, p. 430.) Although the Practice Act was amended to permit private individuals to serve notice, the common law rule consistently prohibited an interested person from personal service on the opposing party. (See Note, *Process, Summons, Service by Plaintiff's Attorney* (1929) 3 So.Cal.L.Rev. 129.) In 1872 the Legislature enacted section 410 limiting personal service to a nonparty or the sheriff of the county where the defendant is found. (Stats. 1873-1874, Amendments to the Codes, ch. 383, § 48, p. 297.) ██ In prohibiting personal service of process by parties, the current section 414.10 continues the intent of section 410.

The long-standing prohibition on personal service by the opposing party arises from the adversarial interest present in legal actions and the concern for discouraging fraudulent service. "The common law rule was that an

---

[8] See section 543.

[9] The order states the defendant shall not "contact, molest, attack, strike, threaten, sexually assault, batter, telephone or disturb the peace . . . ."

interested party could not serve a summons, the policy behind the rule being that an interested party should not be put in a position whereby he might gain an advantage over his antagonist." (Com. (1929) 3 So.Cal.L.Rev. 129.)

Although attorneys are competent to serve process, the prohibition on service by the opposing party is strictly enforced. (See *Sheehan* v. *All Persons* (1926) 80 Cal.App. 393 [252 P. 337].) When a party has served notice on the opposing party, the court lacks personal jurisdiction over the defendant. (*In re Marriage of Smith* (1982) 135 Cal.App.3d 543 [185 Cal.Rptr. 411].) Personal service by a party renders any judgment or order arising from the proceeding void, despite the defendant's actual notice. (*Sullivan* v. *Sullivan* (1967) 256 Cal.App.2d 301 [64 Cal.Rptr. 82].[10])

█ Including a named protected person in the prohibition of party service under section 414.10 supports the policy of separating persons involved in domestic violence. Here, the personal service on Coppola was not effective because of Tucker's significant similarity of interest with the named plaintiff, Caldwell. We hold a named person protected under a domestic violence injunctive order cannot validly personally serve such orders and related legal process on a defendant. Because there was no competent service and Coppola did not waive this defect, the restraining order is void for lack of personal jurisdiction.

### DISPOSITION

The judgment is reversed.

Todd, Acting P. J., and Benke, J., concurred.

---

[10]Both *Smith* and *Sullivan* involve dissolution proceedings, where the parties' history of disputes may make abuse of process more likely.