BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE GEORGE W. KENNEDY, DISTRICT ATTORNEY, COUNTY OF SANTA CLARA, has requested an opinion on the following question:
May a law enforcement officer seize a firearm from a person on the basis that the person is the subject of an "emergency protective order"?
 CONCLUSION
A law enforcement officer may seize a firearm from a person on the basis that the person is the subject of an "emergency protective order" if the order includes an existing restraining order as specified in Family Code section 6218
 ANALYSIS
The Legislature has enacted a comprehensive statutory scheme, the Domestic Violence Prevention Act (Fam. Code, §§ 6200-6390; "Act")[1] "to prevent the recurrence of acts of violence and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence" (§ 6220; see Caldwell v. Coppola (1990) 219 Cal.App.3d 859, 863). The question presented for resolution concerns whether a law enforcement officer may seize a firearm from a person because the person is the subject of an emergency protective order issued under the Act's provisions. We conclude that a law enforcement officer would have such authority if the order includes an existing restraining order as specified in section 6218.
In analyzing the various requirements of the Act, we are guided by well-established principles of statutory construction. "In construing a statute, our principal task is to ascertain the intent of the Legislature." (Yoshisato v. Superior Court (1992) 2 Cal.4th 978, 989.) "In determining intent, we look first to the language of the statute, giving effect to its `plain meaning.'" (Kimmel v. Goland (1990)51 Cal.3d 202, 208-209.) "A statute must be construed `in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts.' [Citation.]" (People v. Woodhead (1987)43 Cal.3d 1002, 1009.) "Of course, we interpret a statute in context, examining other legislation on the same subject, to determine the Legislature's probable intent. [Citations.]" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.3d 627[14 Cal.4th 627], 642.)
An emergency protective order is one that is issued under the terms of sections 6240-6274. (§ 6215.) Section 6250 states the "immediate and present danger" grounds upon which an emergency protective order may be issued:
 "A judicial officer may issue an ex parte emergency protective order where a law enforcement officer asserts reasonable grounds to believe any of the following:
 "(a) That a person is in immediate and present danger of domestic violence, based on the person's allegation of a recent incident of abuse or threat of abuse by the person against whom the order is sought.
 "(b) That a child is in immediate and present danger of abuse by a family or household member, based on an allegation of a recent incident of abuse or threat of abuse by the family or household member.
 "(c) That a child is in immediate and present danger of being abducted by a parent or relative, based on a reasonable belief that a person has an intent to abduct the child or flee with the child from the jurisdiction or based on an allegation of a recent threat to abduct the child or flee with the child from the jurisdiction.
 "(d) That an elder or dependent adult is in immediate and present danger of abuse as defined in Section 15610.07 of the Welfare and Institutions Code, based on an allegation of a recent incident of abuse or threat of abuse by the person against whom the order is sought, except that no emergency protective order shall be issued based solely on an allegation of financial abuse."
The judicial officer must make a finding of "an immediate and present danger" for issuance of an emergency protective order as specified in section 6251:
 "An emergency protective order may be issued only if the judicial officer finds both of the following:
 "(a) That reasonable grounds have been asserted to believe that an immediate and present danger of domestic violence exists, that a child is in immediate and present danger of abuse or abduction, or that an elder or dependent adult is in immediate and present danger of abuse as defined in Section 15610.07 of the Welfare and Institutions Code.
 "(b) That an emergency protective order is necessary to prevent the occurrence or recurrence of domestic violence, child abuse, child abduction, or abuse of an elder or dependent adult."
Section 6253 requires an emergency protective order to include various provisions:
 "An emergency protective order shall include all of the following:
"(a) A statement of the grounds asserted for the order.
"(b) The date and time the order expires.
 "(c) The address of the superior court for the district or county in which the endangered person or child in danger of being abducted resides.
 "(d) The following statements, which shall be printed in English and Spanish:
 "(1) `To the Protected Person: This order will last only until the date and time noted above. If you wish to seek continuing protection, you will have to apply for an order from the court, at the address noted above. You may seek the advice of an attorney as to any matter connected with your application for any future court orders. The attorney should be consulted promptly so that the attorney may assist you in making your application.'
 "(2) `To the Restrained Person: This order will last until the date and time noted above. The protected party may, however, obtain a more permanent restraining order from the court. You may seek the advice of an attorney as to any matter connected with the application. The attorney should be consulted promptly so that the attorney may assist you in responding to the application.'
 "(e) In the case of an endangered child, the following statement, which shall be printed in English and Spanish: `This order will last only until the date and time noted above. You may apply for a more permanent restraining order under Section 213.5 of the Welfare and Institutions Code from the court at the address noted above. You may seek the advice of an attorney in connection with the application for a more permanent restraining order.'
 "(f) In the case of a child in danger of being abducted, the following statement, which shall be printed in English and Spanish: `This order will last only until the date and time noted above. You may apply for a child custody order from the court, at the address noted above. You may seek the advice of an attorney as to any matter connected with the application. The attorney should be consulted promptly so that the attorney may assist you in responding to the application.'"
Nothing in sections 6240-6274 governing the issuance of emergency protective orders expressly refers to the seizure of firearms from the restrained person. However, section 6252 permits a judicial officer to include in an emergency protective order various other orders. Section 6252 states:
 "An emergency protective order may include any of the following specific orders, as appropriate:
"(a) A protective order, as defined in Section6218.
 "(b) An order determining the temporary care and control of any minor child of the endangered person and the person against whom the order is sought.
 "(c) An order authorized in Section 213.5 of the Welfare and Institutions Code, including provisions placing the temporary care and control of the endangered child and any other minor children in the family or household with the parent or guardian of the endangered child who is not a restrained party.
 "(d) An order determining the temporary care and control of any minor child who is in danger of being abducted.
 "(e) An order authorized by Section 15657.03 of the Welfare and Institutions Code."
Of significance here is that an emergency protective order may include "[a] protective order, as defined in Section 6218." (§ 6252, subd. (a).) Section 6218 defines a protective order as follows:
 "`Protective order' means an order that includes any of the following restraining orders, whether issued ex parte, after notice and hearing, or in a judgment:
 "(a) An order described in Section 6320 enjoining specific acts of abuse.
 "(b) An order described in Section 6321 excluding a person from a dwelling.
 "(c) An order described in Section 6322
enjoining other specified behavior."
Hence, a section 6218 protective order that may be included in an emergency protective order is a restraining order identified in sections6320, 6321, or 6322. Section 6320 states:
 "The court may issue an ex parte order enjoining a party from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members."
Section 6321 provides:
 "(a) The court may issue an ex parte order excluding a party from the family dwelling, the dwelling of the other party, the common dwelling of both parties, or the dwelling of the person who has care, custody, and control of a child to be protected from domestic violence for the period of time and on the conditions the court determines, regardless of which party holds legal or equitable title or is the lessee of the dwelling.
 "(b) The court may issue an order under subdivision (a) only on a showing of all of the following:
 "(1) Facts sufficient for the court to ascertain that the party who will stay in the dwelling has a right under color of law to possession of the premises.
 "(2) That the party to be excluded has assaulted or threatens to assault the other party or any other person under the care, custody, and control of the other party, or any minor child of the parties or of the other party.
 "(3) That physical or emotional harm would otherwise result to the other party, to any person under the care, custody, and control of the other party, or to any minor child of the parties or of the other party."
Section 6322 states:
 "The court may issue an ex parte order enjoining a party from specified behavior that the court determines is necessary to effectuate orders under Section 6320 or 6321."
Accordingly, as specified in section 6218, an emergency protective order may include a restraining order that is described in sections6320-6322.
If a section 6218 protective order is in effect, whether or not it is included in an emergency protective order, the provisions of section6389 become applicable with respect to the ownership or possession of a firearm by the restrained person. Subdivision (a) of section 6389
specifies:
 "A person subject to a protective order, as defined in Section 6218, shall not own, possess, purchase, or receive a firearm while that protective order is in effect."
Thus, a person subject to a section 6218 restraining order that has been issued and is in effect, including when it is part of an emergency protective order, is prohibited from owning, possessing, purchasing, receiving, or attempting to own, possess, purchase, or receive any firearm while subject to that order. (§ 6389, subd. (a).)[2]
May a law enforcement officer seize a firearm from such person based upon this statutory prohibition?
The Fourth Amendment to the Constitution of the United States provides: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." Ordinarily, a judicial warrant issued on probable cause is necessary to render either a search or seizure of one's person or possessions reasonable. (United States v. Place (1983)462 U.S. 696, 701.)[3] This right of personal security is inherent in the concept of due process, and therefore applies as well to state officers through the Fourteenth Amendment. (Vernonia School Dist. 47J v. Acton (1995) 515 U.S. 646, 652; Elkins v. United States (1960)364 U.S. 206, 213; 80 Ops.Cal.Atty.Gen. 354, 355 (1997).)
Section 1 of article I of the California Constitution, as amended by the 1972 "privacy initiative," provides: "[a]ll people are by nature free and independent and have inalienable rights. Among these are . . . pursuing and obtaining safety, happiness, and privacy." The state's privacy guarantee operates separately and in addition to the Fourth Amendment's protections against unreasonable searches and seizures. For our purposes, however, we need not distinguish between the state and federal constitutional guarantees. (See In re William G. (1985)40 Cal.3d 550, 557, fn. 4.)
The Fourth Amendment does not prohibit all searches and seizures, but rather only those that are "unreasonable." Even without the presence of consent by the person or a warrant based upon probable cause, a search or seizure may be found to be reasonable "if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present. [Citations.]" (United States v. Place, supra, 462 U.S. at p. 701.)
Here, we have been asked only whether a firearm may be "seized" under particular circumstances. No issue of a "search" has been presented.[4]
With respect to seizures pursuant to the Fourth Amendment, the court stated in Soldal v. Cook County (1992) 506 U.S. 56, 61: "[a] `seizure' of property . . . occurs when `there is some meaningful interference with an individual's possessory interests in that property.' [Citation.]" (See Horton v. California (1990) 496 U.S. 128, 133; Arizona v. Hicks (1987)480 U.S. 321, 324; United States v. Jacobsen (1984) 466 U.S. 109, 113,120.) "[S]eizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place. [Citations.]" (Soldal v. Cook County, supra, 506 U.S. at p. 68; see Horton v. California, supra, 496 U.S. at pp. 133-134.)
If law enforcement officers see an object in "plain view," they may seize the object without a warrant if its incriminating character is immediately apparent. (Minnesota v. Dickerson (1993) 508 U.S. 366, 375; Horton v. California, supra, 496 U.S. at pp. 136-137; People v. Webster (1991) 54 Cal.3d 411, 431; People v. Calvert (1993) 18 Cal.App.4th 1820,1829-1830.) In Minnesota v. Dickerson, supra, 508 U.S. 366, the court observed:
 ". . . The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no `search' within the meaning of the Fourth Amendment — or at least no search independent of the initial intrusion that gave the officers their vantage point. [Citations.] The warrantless seizure of contraband that presents itself in this manner is deemed justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment. [Citations.]" (Id. at p. 375)
In the present circumstances, the prohibition of subdivision (a) of section 6389 provides the "incriminating character" for the firearm seized. The statute makes the firearm contraband while the section6218 protective order is in effect.
Our interpretation of the terms of sections 6218, 6252, and6389 is supported by other provisions of law. Penal Code section12028.5, subdivision (b), authorizes a law enforcement officer "who is at the scene of a domestic violence incident involving a threat to human life or a physical assault" to "take temporary custody of any firearm or other deadly weapon in plain sight or discovered pursuant to a consensual search as necessary for the protection of the peace officers or other persons present." This Penal Code statute thus provides protection during a domestic violence incident similar to that provided by section 6389.
Finally, we point out that federal law makes it unlawful for a person who is the subject of a state domestic violence restraining order to possess a firearm. In U.S. v. Kafka (9th Cir. 2000) 222 F.3d 1129,1132-1133, the court observed:
 "In this case, the state court issued a restraining order against Kafka based on a specific finding that he had committed an act of domestic violence. The restraining order transformed the otherwise `innocent' nature of Kafka's gun possession because it specifically curtailed his activities in light of the court's recognition of his past violent behavior. In particular, the order restrained him from causing Mrs. Kafka or her daughter physical harm, bodily injury, or assault, and from molesting, harassing, threatening or stalking either of them. Given these restrictions, the issuance of the order itself should have alerted Kafka to the possibility of other limitations on his conduct, including the prohibition on his possession of firearms, especially when one acknowledges that a firearm is the ultimate instrument to accomplish the acts which the restraining order specifically prohibited. . . ."
We conclude that a law enforcement officer may seize a firearm from a person on the basis that the person is the subject of an emergency protective order if the order includes an existing restraining order as specified in section 6218.
[1] All references hereafter to the Family Code are by section number only.
[2] Section 6389 provides for the return of the firearm to the restrained person at the expiration of the protective order. The statute also places an affirmative duty upon the restrained person to relinquish any firearms, but allows for an exemption from relinquishment in specified circumstances. The terms and conditions of section 6389 that attach to an existing protective order are beyond the scope of this opinion except as noted above.
[3] The warrant clause of the Fourth Amendment states that ". . . no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
[4] We may assume for purposes of this opinion that the law enforcement officer is lawfully present where the firearm is observed, but that the restrained person has not consented to the seizure of the firearm.