Filed 6/15/26  Jacobson v. Gandy CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| BETH J. JACOBSON, | D086005 |
| Respondent, | |
| v. | (Super. Ct. No. 24HR021887E) |
| ROBERTA L. GANDY, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Tim Nader, Judge.  Reversed and remanded with directions.

Roberta L. Gandy, in pro. per.; Ad Astra Law Group, Katy M. Young, and Matt Kumin for Appellant.

Donald R. Holben & Associates, Donald R. Holben, William N. Pabarcus, and Karen S. Spicker for Respondent.

Roberta L. Gandy appeals from a civil harassment restraining order (CHRO) issued against her and in favor of Beth Jacobson.  (Code Civ. Proc.,[1]

---

1      All subsequent undesignated statutory references are to the Code of Civil Procedure.

§ 527.6.) Gandy contends that the trial court erred by permitting Jacobson to serve the CHRO papers on her by mail, and that the service by mail was defective because Jacobson's mailing did not include the CHRO request and temporary restraining order (TRO), as required by section 527.6, subdivision (m)(1). Based on the undisputed facts, we agree with the latter argument and conclude that the trial court lacked personal jurisdiction over Gandy when it conducted the CHRO hearing and issued the CHRO in her absence. We reverse the CHRO and remand the matter to the trial court with directions to conduct further proceedings consistent with this opinion. Accordingly, we need not discuss Gandy's other claims of error unrelated to the personal jurisdiction issue.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 12, 2024, Jacobson filed a pro per request for CHRO against Gandy. She asserted that Gandy was a former physical therapy patient who owed her money and refused to pay for treatments rendered in 2020 and 2021. According to Jacobson, Gandy had been harassing and defaming her for two years.

Jacobson alleged that Gandy had posted 27 false one-star reviews of her and her company on Google, Yelp, and Healthgrades under 11 different aliases; sent at least 25 e-mails to Jacobson's company; called Jacobson on her home phone; reported Jacobson five times to three different government and business organizations (resulting in no action taken against Jacobson or her company); dug up information on Jacobson from the 1980s in the San Diego courthouse archives; and posted falsehoods about her on social media. Because of the false allegations, Jacobson alleged she had lost business, had to downsize her practice and move to a smaller location, and

2

lost about 60 to 70 percent of her income. Jacobson feared that Gandy was stalking her, was mentally unstable, and would "take it further."

The CHRO request sought personal conduct orders and stay-away orders against Gandy, including orders to cease posting anything about Jacobson and her business online or elsewhere, to remove any existing postings about Jacobson or her company, and to cease filing frivolous complaints to government or business entities.

The court issued a TRO the same day the petition was filed and set a hearing for December 17, 2024.

On December 17, 2024, Jacobson appeared at the hearing representing herself. Gandy did not appear. At the hearing, Jacobson presented evidence of unsuccessful attempts to serve Gandy with the CHRO request and related documents at an address in Kingman, Arizona. According to the sworn statement of a deputy sheriff in Arizona dated November 13, 2024, he was unable to make personal service on Gandy at the Kingman address. He later received a call from Gandy who stated she would not accept service there and directed him to contact her lawyer in San Diego. The deputy sheriff tried calling the lawyer but there was no answer. According to the declaration of an Arizona process server, she also attempted to serve Gandy at the Kingman address for four consecutive days on December 5-8, 2024. There was no answer at the door each time, and the process server noticed packages left in front of the door on the second, third, and fourth day. She concluded that Gandy "may be out of town."

According to the minutes of the December 17, 2024 hearing, the court found there was "proper unsuccessful service by a licensed process server in the state of Arizona" and authorized Jacobson to serve Gandy by certified

mail.  The court also reissued the TRO pending the next hearing date and set a new hearing for January 7, 2025.

The final signed Order on Request to Continue Hearing (Judicial Council Form CH-116) contained contradictory statements about service of the papers.  One of the checked boxes stated: "Court finds valid proof of unsuccessful service by a process server.  Petitioner to serve the respondent by certified mail."  (Capitalization omitted.)  But the next line of the form had a checked box stating: "You must have the restrained party *personally served* with a copy of this order and a copy of all documents listed in form CH-109, item 6, by 01/02/2025."  (Italics added.)  The referenced documents listed in item 6 of Judicial Council form CH-109 include the CHRO request and TRO.

On December 20, 2024, Jacobson filed a proof of service by mail on Gandy at the Kingman address using Judicial Council Form CH-250.  Line 4 of the form states that the server "mailed a copy of all documents checked below" and is immediately followed by lines 4a, 4b, and 4c.  Line 4a is a preprinted line for service of Form "CH-120, *Response to Request for Civil Harassment Restraining Orders*."  Line 4b is a preprinted line for service of Form "CH-130, *Civil Harassment Restraining Order After Hearing*."  Line 4c is for service of "Other" documents and includes a checkbox and blank lines to specify what document was served.  There are no preprinted lines on the CH-250 form for service of the CHRO petition (Form CH-100) or temporary restraining order (Form CH-110).

Jacobson checked the "Other" box to designate what documents she had served on Gandy and wrote in handwriting next to this box: "Order on Request to Continue Hearing."  The proof of service did not state that

4

Jacobson served the CHRO request or TRO on Gandy.[2]  Attached to the proof of service was a United States Postal Service certified mail receipt showing a mailing to Gandy at the Kingman address on December 18, 2024, but no return receipt signed by Gandy.

On January 3, 2025, four days before the continued hearing date, Jacobson submitted a Notice of Lodgment with 63 pages of exhibits to the court.  The record includes no proof of service of the Notice of Lodgment on Gandy.

Jacobson represented herself at the hearing of January 7, 2025.  Gandy did not appear.  According to the minute order, the court heard argument from Jacobson, received and reviewed the exhibits submitted, and granted a three-year CHRO against Gandy.  The same day, the court issued a written CHRO after hearing (Judicial Council Form CH-130).  Jacobson later filed an "Affidavit of Unsuccessful Service" of the CHRO and a process server's declaration regarding unsuccessful attempts to serve Gandy personally at an address in Santee, California.  The record does not explain why Jacobson attempted to serve the initial CHRO documents on Gandy at the Kingman, Arizona address and the CHRO after hearing at the Santee, California address.

On January 17, 2025, represented by counsel, Gandy filed a motion to reconsider and stay or dismiss the CHRO on the ground that there were two

_____

[2]     The Proof of Service Form used by Jacobson (Judicial Council Form CH-250) stated that the server had to be someone who was not listed in items 1, 2, or 3 of the CHRO request (Judicial Council Form CH-100).  Jacobson identified herself as the person who accomplished the service by mail even though she was listed as the person seeking protection on item 1 of her CHRO request.

5

other pending actions between the parties involving related issues. The supporting papers also asserted that Jacobson "did not personally serve Ms. Gandy, but gave the Court a song and [dance] to get around the personal service requirement." In a sworn declaration, Gandy asserted that she learned for the first time on January 10, 2025 that Jacobson had filed the CHRO request in November 2024; she was "never served personally or in any other way" with the petition; and she "never took any actions to evade service and merely referred any inquiries to [her] attorney of record" in the other pending cases between the parties.

The court held a hearing on Gandy's motion and denied it without prejudice on February 19, 2025. At the hearing, Jacobson was represented by counsel for the first time. The court set a deadline for Gandy to file a motion to modify the CHRO and scheduled another hearing on the motion.

On February 28, 2025, Gandy filed an emergency ex parte application to "dismiss TRO." (Capitalization omitted.) The court denied the application without prejudice because the nature of the alleged emergency was not explained and Gandy had given insufficient notice.

On March 4, 2025, Gandy filed her motion to modify the CHRO. She asserted that the CHRO amounted to a prior restraint of speech in violation of her First Amendment rights; the CHRO was predicated on false facts; the CHRO request and supporting documents were improperly served and deprived Gandy of her due process right to contest its issuance; the CHRO was constitutionally overbroad; the order should be modified because of a change of circumstances; and Jacobson had unclean hands because she had violated a harassment order issued by an Arizona court. Although the motion was styled as a motion for "modification" of the CHRO, Gandy's

6

argument on deficient service asserted that the CHRO "must be vacated on due process violations forthwith."

On March 11, 2025, the court held a hearing on the motion. According to the minute order, the court ruled as follows: "The Court finds no new circumstances that support a modification and states the proper recourse is an appeal. The motion for modification is DENIED."

Gandy filed a notice of appeal on March 20, 2025. The notice of appeal stated that she was appealing from the order of March 11, 2025.

DISCUSSION

I

We begin by addressing Jacobson's arguments that Gandy's March 20, 2025 notice of appeal was untimely as to the January 7, 2025 CHRO and also did not encompass the CHRO because it only specified the March 11, 2025 order denying Gandy's motion to modify the CHRO. We reject both arguments.

First, the March 20, 2025 notice of appeal was filed within the time permitted to appeal from the January 7, 2025 CHRO. A notice of appeal must be filed on or before the earliest of: (1) 60 days after the clerk or the appealing party serves a notice of entry of judgment or a filed-endorsed copy of the judgment accompanied by proof of service; or (2) 180 days after entry of judgment. (Cal. Rules of Court, rule 8.104(a)(1).) Here, the 60-day deadline does not apply because neither the clerk nor a party served notice of entry of the CHRO or a filed-endorsed copy of the CHRO accompanied by a proof of service. The 180-day deadline therefore applies. Gandy's March 20, 2025 notice of appeal was filed within 180 days of the January 7, 2025 CHRO.

Second, although the notice of appeal only stated that Gandy was appealing from the March 11, 2025 order denying her motion to modify the

7

CHRO, we liberally construe the notice of appeal to encompass the underlying CHRO as well. (See *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 19–22.) A reviewing court should construe a notice of appeal from the denial of a post-judgment motion "to be an appeal from the underlying judgment when it is reasonably clear the appellant intended to appeal from the judgment and the respondent would not be misled or prejudiced." (*Id.* at p. 22.) Here, Gandy's motion for modification of the CHRO attacked the validity of the underlying CHRO itself, including the lack of proper service. The March 11, 2025 order denying her motion stated that "the proper recourse is an appeal" rather than a motion to modify the CHRO. Gandy's designation of the record on appeal also identified pre-CHRO pleadings relating to the validity of the underlying CHRO, such as Jacobson's request to serve her by mail and her proof of service. In these circumstances, we conclude it is reasonably clear that Gandy intended to appeal from the underlying CHRO as well as the order denying her motion to modify the CHRO, and Jacobson would not be misled or prejudiced by so construing the notice of appeal.

As a practical matter, we note that this makes little difference to the outcome because we dispose of the appeal based on the lack of proper service on Gandy. Gandy raised the service issue and asked to have the CHRO vacated on that ground in her motion to "modify" the CHRO, which the trial court denied in its March 11, 2025 order. As we explain below, lack of personal jurisdiction may be raised at any time, even for the first time on appeal. Accordingly, Gandy still could have raised the service issue on appeal even if she were limited to appealing the March 11, 2025 order.

8

## II

On the merits, Gandy contends that the trial court erred by permitting substitute service on her by mail, and also that the service by mail was defective because Jacobson only mailed the Order on Request to Continue Hearing, not the CHRO request or TRO as required by section 527.6, subdivision (m)(1). We agree with the latter argument.

" 'On review, the question of jurisdiction is, in essence, one of law. When the facts giving rise to jurisdiction are conflicting, the trial court's factual determinations are reviewed for substantial evidence. [Citation.] Even then, we review independently the trial court's conclusions as to the legal significance of the facts. [Citations.] When the jurisdictional facts are not in dispute, the question of whether the defendant is subject to personal jurisdiction is purely a legal question that we review de novo.' " (*Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 568.)

Compliance with the statutory procedures for service of process is essential to establish personal jurisdiction. (*California Capital Ins. Co. v. Hoehn* (2024) 17 Cal.5th 207, 214.) "Knowledge by a defendant of an action will not satisfy the requirement of adequate service of a summons and complaint." (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1226; see also *Mannesmann DeMag v. Superior Court* (1985) 172 Cal.App.3d 1118, 1124 [court lacked personal jurisdiction over defendant due to noncompliance with statutory service requirements even though it was "undeniable" the defendant "had actual notice of the lawsuit"].) "In order for a judgment to be entered against a person, he or she must be made a party to the proceeding according to law." (*Ikerd v. Warren T. Merrill & Sons* (1992) 9 Cal.App.4th 1833, 1842.)

9

"[A] trial court lacks jurisdiction in a fundamental sense when it lacks personal jurisdiction over a party." (*Brue v. Al Shabaab* (2020) 54 Cal.App.5th 578, 586.) "Fundamental jurisdiction is, at its core, authority over both the subject matter *and the parties*. . . . When a court lacks fundamental jurisdiction, its ruling is void. A claim based on a lack of fundamental jurisdiction may be raised at any point in a proceeding including for the first time on appeal." (*People v. Chavez* (2018) 4 Cal.5th 771, 780, italics added.)

The CHRO statute specifies the requirements for service on the respondent. Section 527.6, subdivision (m)(1), requires that "the respondent shall be personally served with a copy of the petition, temporary restraining order, if any, and notice of the hearing of the petition," with the required service of these documents to be made "at least five days before the hearing." Subdivision (m)(2) in turn allows a court to authorize substitute methods of service in certain circumstances: "If the court determines at the hearing that, after a diligent effort, the petitioner has been unable to accomplish personal service, and that there is reason to believe that the respondent is evading service or cannot be located, then the court may specify another method of service that is reasonably calculated to give actual notice to the respondent and may prescribe the manner in which proof of service shall be made."

We need not decide whether the trial court erred by authorizing substitute service because the record demonstrates that Jacobson's service by mail was itself deficient. According to the proof of service, Jacobson only mailed the "Order on Request to Continue Hearing" to Gandy. The record contains no proof of service of the CHRO request or the TRO, as required by section 527.6, subdivision (m)(1). Construing subdivisions (m)(1) and (m)(2)

10

together, we conclude that when the court authorizes service by mail in lieu of personal service, the serving party must give notice to the respondent by mailing the documents listed in subdivision (m)(1), including the CHRO request and TRO.  This is also the most reasonable interpretation of the court's order authorizing service by mail in lieu of personal service.  Although Gandy raised this issue in her opening brief, Jacobson has not disputed the fact that she did not serve the CHRO request or TRO on Gandy.  Based on the undisputed facts in the record, the service by mail did not comply with the requirements of the statute as a matter of law.

Some courts have suggested that "substantial compliance" with statutory service requirements may be sufficient if the defendant has actual notice of the litigation.  (*Mjs Enters. v. Superior Court* (1984) 153 Cal.App.3d 555, 557; *Cory v. Crocker National Bank* (1981) 123 Cal.App.3d 665, 669; but see *Bolkiah v. Superior Court* (1999) 74 Cal.App.4th 984, 1000 ["We agree with petitioners strict compliance with service requirements is required under California law"]; *Lee v. Placer Title Co.* (1994) 28 Cal.App.4th 503, 509 ["Successful service by mail requires strict compliance with all statutory requirements . . . ; the failure to comply deprives a court of jurisdiction to act."].)  Even assuming substantial compliance suffices, however, such a finding would require three conditions: (1) there was some degree of compliance with the offended statutory requirements; (2) the objective nature and circumstances of the attempted service made it highly probable it "would impart the same notice as full compliance"; and (3) it did in fact impart such notice, or at least sufficient notice to put the defendant on her defense. (*Carol Gilbert, Inc. v. Haller* (2009) 179 Cal.App.4th 852, 865–866 (*Carol Gilbert*).)

11

Jacobson's service of the Order on Request to Continue Hearing did not satisfy each of these requirements. Although it may constitute *some* degree of compliance with the statute, it did not "impart the same notice as full compliance." (*Carol Gilbert, supra*, 179 Cal.App.4th at p. 866.) Specifically, the order did not give Gandy notice of the allegations Jacobson was making against her in the CHRO request, the nature of the requested relief, or the terms of the TRO issued by the court. Full compliance with the statute would have put Gandy on notice of all these things. Moreover, the Order on Request to Continue Hearing was itself potentially misleading because it contained contradictory provisions allowing service by mail but also requiring personal service of the CHRO request and TRO, which could have caused confusion about the need for Gandy to defend herself absent personal service. Service of this order alone therefore did not constitute substantial compliance with the statute.[3]

---

[3] Though not raised by Gandy on appeal, we observe that the service by mail may also have been deficient because it was performed by Jacobson herself, a party to the proceeding who was already a protected person under the TRO. (See § 414.10 [service must be by someone "who is at least 18 years of age and not a party to the action"]; *Caldwell v. Coppola* (1990) 219 Cal.App.3d 859, 862–865 (*Caldwell*) [personal service by person named as protected party under TRO issued under Domestic Violence Protection Act was not effective and the restraining order after hearing was therefore "void for lack of personal jurisdiction"].) "The long-standing prohibition on personal service by the opposing party arises from the adversarial interest present in legal actions and the concern for discouraging fraudulent service." (*Id.* at p. 864.) Furthermore, for service by mail on a person outside California, the "proof of service shall include evidence satisfactory to the court establishing actual delivery to the person to be served, by a signed return receipt or other evidence." (§ 417.20, subd. (a).) Jacobson's proof of service by mail to the Kingman, Arizona address did not include a signed return receipt or other evidence of actual delivery to Gandy. However, we do

Jacobson nevertheless argues that Gandy made a general appearance by filing her post-CHRO motions. "A general appearance by a party is equivalent to personal service of summons on such party." (§ 410.50, subd. (a).) " 'By generally appearing, a defendant relinquishes all objections based on lack of personal jurisdiction or defective process or service of process.' " (*ViaView, Inc. v. Retzlaff* (2016) 1 Cal.App.5th 198, 210.)

We agree that Gandy made a general appearance by filing her post-CHRO motions. "A general appearance occurs when the defendant takes part in the action or in some manner recognizes the authority of the court to proceed. [Citations.] If the defendant confines its participation in the action to objecting to lack of jurisdiction over the person, there is no general appearance. [Citations.] However, a party who seeks relief on any basis other than a motion to quash for lack of personal jurisdiction will be deemed to have made a general appearance and waived all objections to defects in service, process, or personal jurisdiction." (*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52.)

Gandy's post-CHRO motions were not limited to the personal jurisdiction issue. She also sought to modify, vacate, or stay the CHRO on multiple other grounds, including that it was predicated on false facts, it violated her First Amendment rights, it was constitutionally overbroad, there were other actions pending between the parties, and Jacobson had unclean hands. By seeking relief from the court on grounds not limited to personal jurisdiction, Gandy made a general appearance. (See *Lacey v. Bertone* (1949) 33 Cal.2d 649, 651–652 [motion for dissolution or modification of injunction on grounds not limited to personal jurisdiction, including that there "was no

_____

not rest our decision on these grounds because they have not been briefed.

13

sufficient ground for the injunction and that it was too broad in scope," constituted a general appearance].)

We disagree, however, that Gandy's general appearance *after* issuance of the CHRO operated retrospectively to validate the CHRO. Under current California law, a general appearance only operates prospectively "throughout subsequent proceedings in the action." (§ 410.50, subd. (b).) A post-judgment general appearance therefore does not reach backwards in time to cure a lack of personal jurisdiction at the time of the judgment. (*In re Marriage of Smith* (1982) 135 Cal.App.3d 543, 545, 547–554.) Gandy's general appearance after issuance of the CHRO only operated prospectively to give the court personal jurisdiction over her in any subsequent proceedings, not retrospectively to cure the absence of personal jurisdiction *before* she made her general appearance.

In sum, we conclude that the trial court lacked personal jurisdiction over Gandy when it conducted the CHRO hearing and issued the CHRO. "Proper service is a requirement for a court's exercise of personal jurisdiction." (*Caldwell, supra*, 219 Cal.App.3d at p. 863.) We therefore reverse the CHRO and remand the matter to the trial court to conduct further proceedings consistent with this opinion. In the proceedings on remand, however, the court may exercise personal jurisdiction over Gandy without formal service of the CHRO request and TRO based on her general appearance after issuance of the CHRO.[4]

---

[4]    Gandy's motion for judicial notice of the complaints in two other pending actions is denied because the documents are not relevant to the issue we find to be dispositive and Gandy has failed to explain why she did not request judicial notice of these documents in the trial court.

14

## DISPOSITION

The CHRO is reversed and the matter is remanded to the trial court with directions to conduct further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.


                                                              BUCHANAN, J.

WE CONCUR:


DATO, Acting P. J.


CASTILLO, J.